**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**LOUIS CERULLO,**

          **Plaintiff,**

**-vs-**                                      **Case No.  6:09-cv-1538-Orl-DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

          **Defendant.**
_____

**MEMORANDUM OPINION AND ORDER**

This cause came on for consideration without oral argument on review of the Commissioner's decision to deny Plaintiff's application for Social Security Disability Insurance benefits. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

*PROCEDURAL HISTORY*

On June 12, 2004, Plaintiff applied for Social Security Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423, alleging an onset date of March 1, 1993 (R. 48-50). The application was denied initially and on reconsideration (R. 21, 28), and Plaintiff requested and received an administrative hearing before James Russell, Administrative Law Judge (hereinafter "ALJ") (R. 430-466). An unfavorable decision was issued on February 20, 2007, finding that Plaintiff was not disabled through December 31, 1993, the date his insured status expired (R. 10-18). The Appeals Council subsequently denied Plaintiff's request for review (R. 5), and Plaintiff sought judicial review in this Court.

On review, the Court granted the Commissioner's Motion to Remand (R. 48-81), and on May 27, 2008, entered a judgment reversing the Commissioner's decision and remanding the case for further administrative proceedings (R. 441-42) (Middle District of Florida Case no. 6:07cv1445).

The Appeals Council then vacated the decision and remanded the case to ALJ Apolo Garcia (R. 445-46). Another administrative hearing was held (R. 533-568), and on May 11, 2009, ALJ Garcia denied Plaintiff's application (R. 470-77).

The parties agree that Plaintiff has exhausted his administrative remedies, making the ALJ's decision the final decision of the Commissioner, and Plaintiff timely filed the instant action for review. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, and the matter is ripe for review under 42 U.S.C. § 405(g).

## *NATURE OF CLAIMED DISABILITY*

Plaintiff alleges he became disabled on March 1, 1993, due to depression and post traumatic stress disorder (R. 74).

### *Summary of Evidence Before the ALJ*

Plaintiff was 45 years old when his insured status expired (R. 476), with an advanced degree (MBA) and past relevant work experience as a certified public accountant, financial analyst, and president of an accounting firm (R. 75, 82, 84, 91-2).

Plaintiff's pertinent medical history is set forth in detail in the ALJ's decision and, in the interests of privacy and brevity, will not be repeated here, except as necessary to address Plaintiff's objections. In addition to the scant medical records of treating providers within the pertinent time period, the record[1] includes the opinions of non-examining state agency consultants, the forms and reports completed by Plaintiff with respect to this claim, as well as the testimony of Plaintiff at the hearings and the testimony of a Vocational Expert. By way of summary, the ALJ found Plaintiff had severe impairments of affective disorder and anxiety disorder (R. 472, finding 3), and the record

---

[1] For unknown reasons, a supplemental transcript has been filed which appears to contain duplicates of some of the papers already of record. Moreover, the Bates numbers are inconsistent, with two different pages appearing, for example, as page 439. To the extent possible, the Court refers to the initial certified record citation.

supports this uncontested finding. The ALJ determined that Plaintiff's impairments did not meet or medically equal one of the impairments listed in the Listing of Impairments (the Listings), 20 C.F.R. pt. 404, subpt. P, app. 1 (2009), and determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: "he could perform simple, routine, unskilled work" (R. 474, finding 5). The ALJ then determined Plaintiff could not perform his past relevant work but, relying on the testimony of the Vocational Expert, found that there are jobs that exist in significant numbers in the national economy that the Plaintiff could perform (R. 476-77 ), and he was therefore not disabled from the alleged date of onset through the date last insured (R. 477).

### *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable

as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *ISSUES AND ANALYSIS*

Plaintiff raises two issues, contending that: 1) the ALJ erred in determining that Plaintiff was not disabled prior to the date last insured "when the treating physician indicated the claimant had significant limitations that would have interfered with his ability to perform work-related activities, even prior to the date last insured" and 2) the credibility finding is not supported by substantial evidence. Upon review, the Court cannot agree.

### *Treating Physicians*

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also*

-4-

*Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Applied here, Plaintiff, an accountant who owned his own firm, testified that he became unable to work in March 1993 and sought help from a therapist. He was under investigation from the Internal Revenue Service (R. 138), eventually plead guilty to conspiracy to defraud the IRS, and was imprisoned (R. 438-39). As the application for benefits was not filed until years after expiration of his insured status, the vast majority of the medical records provided post-date the relevant period. With respect to the few treating providers closest to the date last insured, Plaintiff contends that the ALJ erred as three treating physicians, Dr. LaPointe, Dr. Rebong, and Dr. Malin, all indicated the claimant had significant limitations that would have interfered with his ability to perform work-related activities, yet the ALJ "only analyze[d] the opinion of Dr. LaPointe dated October 20, 2006, giving it little weight." (Brief at 8). Plaintiff argues that the ALJ erred in discounting the 2006 opinion and, as the ALJ "ignored" the opinions of the two other treating providers, the Court must credit those opinions as true as a matter of law. Finally, Plaintiff contends that it was error to rely on the opinion of a non-examining state agency consultant. The Court treats each contention in turn.

**Dr. LaPointe**

As the ALJ noted, Dr. John LaPointe did not begin treating Plaintiff until sometime in 1994 (R. 345, 422, 429, 475).[2] Dr. LaPointe submitted a form, dated October 20, 2006, in which he opined that Plaintiff had several mental limitations that were present as of December 31, 1993 (R. 423-25). The ALJ gave little weight to the opinion, noting that Dr. LaPointe did not treat Plaintiff during the relevant period; the opinion related to Plaintiff's condition in 2006; and Dr. LaPointe appeared to base his opinion in part on "subjective statements" of Plaintiff (R. 475). The Court finds substantial evidence supports this finding.

As set forth in the ALJ's decision, psychologist John LaPointe treated Plaintiff after the expiration of his date last insured and, as such, he was not a treating provider during the relevant period of time. Moreover, the treatment summary is dated October 20, 2006, and concludes that Plaintiff "is determined to be psychologically disabled at this time" (R. 429). While Plaintiff correctly notes that LaPointe indicated that the mental limitations were present since December 31, 1993 (the last date insured) (R. 425), the opinion is unaccompanied by any treatment notes or other contemporaneous medical record from that time that would support a conclusion that an opinion rendered thirteen years after the relevant time period is properly retroactive.[3] While the Court would normally take issue with the propriety of discrediting a mental illness diagnosis as being based on

---

[2] The record is in conflict with respect to the exact date of the first visit, with Plaintiff noting that Dr. LaPointe began treating him "on June 1, 1994" (Brief at p. 6, citing R. 345) and later noting treatment began "on October 18, 1994" (Brief at p. 9, citing R. 137-40). While the record contains summaries, it does not contain treatment notes from this psychologist. Insurance claim forms, however, indicate that Plaintiff began treatment with Dr. John LaPointe on August 3, 1994, but had been seeing Dr. Lora LaPointe from January 12, 1994 to July 6, 1994 (R. 348-363). It is the opinion of John LaPointe that is at issue here.

[3] Plaintiff's contention that a medical expert was required to infer the date of onset is of no moment. *See Brandt v. Astrue,* No. 5:09-cv-97-Oc-GRJ, 2010 WL 746446, at *11 (M.D. Fla. 2010), citing *McManus v. Barnhart*, 2004 WL 3316303, at *6-7 (M.D. Fla. 2004)(further development is required only when "the medical evidence of record is ambiguous or inadequate."). Here, Plaintiff was treated for his condition during the relevant time period; there is no need to infer an onset prior to the date of the initial treatment for the condition. As records pertinent to the time period exist, the Commissioner is not required to retain a medical expert to evaluate the opinion of a provider who treated Plaintiff after the date last insured.

subjective statements, in this case, the absence of *any* treatment notes, objective mental status examination findings or similar contemporaneous impressions supports the ALJ's determination not to accord this opinion great weight.

### Dr. Malin and Dr. Rebong

Plaintiff next contends that the ALJ "ignored" the opinions of treating providers Dr. Sharon Malin, Ph.D. and Dr. Efron Rebong. On March 11, 1993, Plaintiff began treating with psychologist Sharon Malin, Ph.D. (R. 166). Although there are no contemporaneous treatment notes of record, Dr. Malin provided several statements. On September 30, 1994, Dr. Malin prepared a narrative statement outlining her treatment of Plaintiff (R. 144-46). She noted that he had come to her "trying to understand the difficulty he had going to work and being productive while he was there." *Id.* She opined that Plaintiff had suffered from significant clinical depression over the course of three to four years (R. 146). In a letter to Plaintiff's criminal defense attorney, Dr. Malin noted that she met with Plaintiff weekly, and sometimes more often, and Plaintiff performed written and reading homework assignments (R. 143). In another letter to Plaintiff's counsel, dated June 3, 1995, Dr. Malin noted that as of March 11, 1993, Plaintiff was experiencing symptoms of depression with problems concentrating, problems with short and long term memory, exhaustion, isolation, and a depressed mood (R.141). She noted that Plaintiff's diagnosis was Dysthymia and she opined that the prognosis "was and is good" (R. 141-42). In that same letter, Dr. Malin reported that Plaintiff was seen by Dr. Efron Rebong and placed on an antidepressant, which reportedly "decreas[ed] the severity of the depression symptomatology" (R. 141).

In a letter dated December 10, 2004, Dr. Efren Rebong noted that he had first seen Mr. Cerullo on June 23, 1993, for an evaluation of depression, upon referral from psychologist Malin (R. 397). Dr. Rebong indicated that "[a]t that time it was obvious that the patient was depressed." *(Id.)*. On the

date of the first evaluation, Dr. Rebong noted Plaintiff to have "signs of depression, eg., sleep difficulties, unmotivations, irritabilities, inability to concentrate and stay focused, feelings of tiredness, inability to function." (*Id*.). The assessment was "Axis I - Major Depression, single episode; Axis IV- Federal Investigations, ruined business, Financial problems, remorse and guilt" (R. 398). Dr. Rebong noted that Plaintiff responded to support and medications, but the persistence of the stressors and moving to Florida caused his depression to fluctuate and persist (R. 397).

Plaintiff contends that Dr. Malin's opinions were not addressed by the ALJ. This contention is refuted by the record, which shows that the ALJ explicitly considered and credited these statements (R. 472-73, 475). The ALJ agreed with Dr. Malin's assessment that Plaintiff was suffering from an affective disorder (R. 472-475), and, by concluding that Plaintiff was unable to perform any past relevant work (R. 475), implicitly agreed with Malin's opinion that Plaintiff's "depression had a profound effect on his thinking and ability to make judgments in his work as an accountant" (R. 142). As set forth above, Dr. Malin opined that Plaintiff's prognosis was good, and his medication was reportedly effective. Plaintiff fails to identify any "opinion" that is inconsistent with the ALJ's determination that Plaintiff retained the RFC for other work.

Plaintiff next contends that the opinion of Dr. Rebong was ignored by the ALJ, contrary to the requirement that the ALJ must "state with particularity the weight he gave different medical opinions and the reasons therefore." *Sharfarz v. Bowen*, F.2d 278, 279 (11th Cir. 1986) (requiring the ALJ to articulate his reasons for "giving no weight to the diagnoses accompanying the test results."). While it is true that the ALJ did not mention Dr. Rebong by name, his "opinion," as set forth in the brief note of record, is that Plaintiff suffered from depression, single episode, and Plaintiff responded to support and medications but the depression, due to stressors, "fluctuated." Dr. Rebong's treatment of Plaintiff and the reported medication response was explicitly set forth by Dr. Malin in her letter of June 3,

which itself was expressly noted by the ALJ in his determination (R. 473) ("In a letter dated June 3, 1995, from Dr. Malin [,][she] reported that the claimant experienced clinical symptoms of depression. . . .She noted that the claimant was taking antidepressant medication which decreased the severity of his depression symptomatology (Exhibit 4F)." As it is clear that the ALJ was aware of and considered Dr. Rebong's treatment and findings, and as the conclusions of Dr. Rebong are not inconsistent with the ALJ's determination, no reversible error is shown. *See Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005) (" In all events, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" so long as the ALJ's decision is not a broad rejection which does not enable the district court to conclude that the ALJ considered claimant's medical condition "as a whole." (*quoting Foote v. Chater*, 67 F.3d 1553, 1557 (11th Cir.1995).) [4]

**Non-treating Examiners**

Plaintiff next contends that the ALJ erred in giving great weight to the opinion of the State Agency physician as "[i]t is well founded that the opinions of reviewing, non-examining physicians, when contrary to those of examining physicians, are entitled to little weight. *Ortega v. Chater*, 933 F.Supp. 1071, 1074 (S.D. Fla. 1996), *citing Lamb v. Bowen*, 847 F.2d 698 (11th Cir. 1988); *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987)." (Brief at 13).

While the ALJ did credit the opinion of the State Agency physician (R. 475), he did so as he found the opinion to be "consistent with the medical reports within the relevant period." *Id.* If this finding is supported by substantial evidence, the ALJ committed no error in relying on the non-examining physician. *See Randolph v. Astrue ,* 291 Fed.Appx. 979, 982, 2008 WL 4148518, 3 (11th Cir. 2008) ("The record demonstrates that the ALJ carefully considered Randolph's medical condition

---

[4] The ALJ did not "reject" the opinions of Dr. Malin and Rebong, as neither provider opined that Plaintiff had disabling limitations greater than those found by the ALJ. Thus, Plaintiff's contention that "the opinions must be accepted as true as a matter of law" is inapposite. Brief at 12-13.

as a whole, and substantial evidence supports the ALJ's findings that Randolph's back impairment was not severe and that Randolph was capable of performing light work. The record also indicates that the ALJ did not solely rely on the opinion of the state agency physicians but considered the record in its entirety. Thus, we conclude that the ALJ did not err in assigning more weight to the expert opinions of the non-examining state agency physicians."). Here, too, the administrative decision reflects that the ALJ did not rely solely on the state agency opinion, but found it to be consistent with the medical record prior to the date last insured. This conclusion is supported by substantial evidence, and must therefore be affirmed.[5]  *See Vuxta v. Commissioner of Social Security*, 194 Fed. Appx. 874, 876 (11th Cir. 2006) ("Under 20 C.F.R. § 404.1527(f)(2), the ALJ must consider non-examining state agency psychologists' opinions and, when the ALJ does not give controlling weight to a treating physician, must explain the weight given to their opinions.")

*Credibility*

Plaintiff's last contention is that the ALJ erred in his finding that "the claimant's medically determinable impairment could have been reasonably expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (R. 475). Error is shown, according to Plaintiff, as his "testimony regarding his impairments is credible, and it is apparent that [he] suffered from significant mental limitations prior

---

[5] In addition to the statements of Dr. Malin and Rebong, the ALJ discussed other record evidence that supports the conclusion that Plaintiff was not disabled on or before the date last insured. For example, on April 26, 1993, Plaintiff underwent a Minnesota Multiphasic Personality Inventory, but a clinical diagnosis could not be made on the basis of the testing alone (R. 130-31). The evaluator indicated Plaintiff had "some tendency to . . . exaggerate his symptoms in an effort to obtain help" and his symptomatic pattern profile was "within normal limits, suggesting that he does not view his problems as very significant at this time" (R. 130). The evaluator concluded that Plaintiff's "tendency toward low moods should be evaluated" and suggested therapeutic intervention for his "morale problem" (*Id.*). *See* R. 473. The ALJ noted Plaintiff's ability to drive, keep numerous appointments with his therapist, concentrate sufficiently to perform weekly homework assignments, and otherwise handle his affairs (R. 473-75). There are no records of hospitalization, and no indication that any treating provider recommended hospitalization.

to the date last insured." (Brief at 14). Plaintiff also contends that the ALJ did not make accurate and specific findings regarding credibility, and therefore failed to develop a full and fair record. The Court disagrees.

Where an ALJ decides not to credit a claimant's testimony about pain or limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, the ALJ did not find Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms to be entirely credible, noting, in detail, that the evidence did not support his allegations (R.475). Contrary to Plaintiff's contention, the ALJ did, in fact, make specific findings regarding Plaintiff's functionality (including Plaintiff's ability to drive, keep appointments, live independently, concentrate and cooperate with others) that were inconsistent with Plaintiff's claimed complete disability. The ALJ also noted Plaintiff's testimony in which he admitted to a positive response to the antidepressant, his ability to engage in activities of daily living, and his imprisonment from July 1995 to July 1998 due to conspiracy to defraud the government (R. 475-paragraph 2). Notably, Plaintiff does not dispute the accuracy of any of these findings. As a full and fair record was developed and these findings are supported by substantial evidence, the determination must be affirmed.

A final note is in order. The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. While it is clear that Plaintiff had challenges and difficulties during the time at issue, and afterwards, the only issue before the Court is whether the decision by the Commissioner that Plaintiff did not meet this standard is adequately supported by the evidence and was made in accordance with proper legal standards. As the Court finds that to be the case, it must affirm the decision.

## *CONCLUSION*

The decision of the Commissioner was supported by substantial evidence and was made in accordance with proper legal standards. As such, it is **AFFIRMED.** The Clerk is directed to enter judgment accordingly and close the file.

**DONE** and **ORDERED** in Orlando, Florida on January 18, 2011.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record